

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GREGORY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>S. RESLER,<br><br>Defendant. | Case No.: 3:16-cv-02538-CAB-KSC<br><br>**REPORT AND RECOMMENDATION RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**[Doc. No. 60]** |

Plaintiff Steven Gregory Williams, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action under Title 42 U.S.C. § 1983 alleging defendants violated his rights guaranteed under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). [Doc. No. 59 ("SAC" hereon)]. For the reasons discussed in greater detail below, it is RECOMMENDED that defendant's Motion to Dismiss be granted in part and denied in part.

## BACKGROUND

I. **Factual Background**

Plaintiff is an incarcerated individual at the California Medical Facility in Vacaville, California, however at the times relevant to the dispute before this Court, plaintiff was incarcerated at the Richard J. Donovan Correctional Facility ("RJDCF") in San Diego,

California. [*Id.*, at p. 4]. Plaintiff alleges he has a permanent mobility impairment resulting, in part, from a fracture to his left leg that has not healed properly. [*Id.*, at pp. 3-4]. As a result, plaintiff was allegedly prescribed by orthopedic specialist, Dr. Cham, a "CamWalker boot" and walker with locking wheels and a seat. [*Id.*].

On December 27, 2015, plaintiff contends he entered the prison Dining Hall 1 using a walker while wearing the boot on his left foot and sat at the ADA designated table using the seat of his walker. [*Id.*, at 5]. An ADA table has no attached seating, whereas regular dining tables have seats with metal struts supporting them that would preclude, for example, a wheelchair bound individual from effectively using the table. The "CamWalker" boot, plaintiff asserts, precludes him from sitting at the able-bodied tables because of "how easy it was for [his] CamWalker boot on [his] left leg to get caught underneath one of the stainless steel seats in the Dining Halls." [*Id.* at p. 7]. Shortly thereafter, defendant allegedly approached plaintiff and asked that he get up from the ADA table and sit at a regular table with the able-bodied inmates. [*Id.* at p. 5]. Plaintiff explained that he was mobility impaired, that he was entitled to sit at the ADA table,[1] and that "[he] was not going to move from the ADA table." [*Id.*]. Plaintiff claims that during that time, other ADA tables were available for incoming wheelchair-bound inmates to utilize. [*Id.* at 6]. Defendant then "escorted [p]laintiff [away from the ADA table] by force." [*Id.* at 7]. At that time plaintiff caught the attention of Sergeant C. Hernandez, defendant's superior officer, who "instructed [d]efendant in [p]laintiff's presence that [he] had a right to sit[] . . . at the ADA tables." [*Id.*] As a result of those events, plaintiff contends he was "denied the benefits of the use of RJDCF's Dining Hall's ADA table." [*Id.*].[2]

The following day, December 28, 2015, defendant issued plaintiff a Serious Rule

---

[1] Plaintiff alleges that he was allowed to sit at an ADA table because he was deemed mobility impaired by his treating physician at RJDCF. [FAC, at pp. 4-5; Exh. F, at pp. 28-30].

[2] Plaintiff alleges that he filed a form requesting Sergeant C. Hernandez to confirm their discussion on December 27, 2015, but Sergeant C. Hernandez has yet to respond to the request. [SAC, at p. 8; Exh. D, at 22].

2

Violation Report that charged him with disobeying a direct order. [*Id.*, at 6; Exh. E, p. 24 ("RVR" hereon)]. Facility Captain Garza and Correctional Sergeant Hernandez signed off on the RVR, and Correctional Sergeant Servantes was the Senior Hearing Officer at the hearing where plaintiff was found guilty. [*Id.*, at Exh. E, pp. 24-26].

On January 20, 2016, defendant allegedly "demanded that [p]laintiff get up from an ADA table where [p]laintiff was sitting in his [w]alker and ordered [p]laintiff to exit [the] dining hall" so that defendant could conduct a clothed body search of plaintiff. [SAC, at p. 8]. Plaintiff claims he complied with defendant throughout the search, but was nonetheless handcuffed and taken to a holding cell. [*Id.*, at p. 9]. Along the way, defendant attempted to knock plaintiff off balance by pushing and shoving him. [*Id.*]. Defendant also allegedly stated he would continue to harass plaintiff, tear up his cell, and ensure that he dies in prison. [*Id.*]. Shortly thereafter, defendant's superior officer, Sergeant H. Starr, arrived and spoke with plaintiff. Plaintiff demonstrated to Sergeant Starr how easily his boot could become stuck under a regular table, which might cause him to fall and further injure himself. [*Id.*].

Plaintiff sues defendant in his official capacity and requests only money damages as relief. [*Id.*, at pp. 2, 3, 17].

## II. Procedural Background

Plaintiff filed the First Amended Complaint on December 2, 2016. [Doc. No. 4]. Defendants filed a Motion to Dismiss on May 30, 2017. [Doc. No. 23]. The Court adopted the Magistrate Judge's Report and Recommendation, dismissing without prejudice plaintiff's claim against defendant and granting plaintiff leave to amend his complaint against defendant under Tile II of the ADA and § 504 of the RA. [Doc. No. 58].[3] Plaintiff filed the SAC on April 26, 2018. [Doc. No. 59]. Defendant filed the instant Motion to

---

[3] Plaintiff's First Amended Complaint [Doc. No. 4 ("FAC" hereon)] included several additional claims against several additional defendants. Those claims were dismissed with prejudice. [Doc. No. 58 (Order Adopting Report and Recommendation [Doc. No. 53])].

3

Dismiss on May 10, 2018. [Doc. No. 60 ("MTD" hereon)]. Plaintiff filed his Opposition to defendant's MTD on July 20, 2018. [Doc. No. 67, ("Opposition" hereon)].

## DISCUSSION

**A.** <u>**Motion to Dismiss Standards**</u>

A plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A motion to dismiss under Federal Rule 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson*, 534 F.3d at 1121. A motion to dismiss should be granted if the plaintiff fails to proffer "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters*, 497 F.3d 972, 975 (9th Cir. 2007). However, it is not necessary for the Court "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

That said, "[a] document filed *pro se* is to be liberally construed, and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson*, 551 U.S. at 94 (2007) (internal citations

4

omitted). Particularly in civil rights cases, courts have an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of the doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985).

### 1. **Allegations in a Complaint that are Contradicted by Attached Exhibits**

The Court finds it necessary to state at the outset the standard by which it evaluates any attached exhibits that might contradict or undermine the SAC. Defendant's reliance on the Seventh Circuit standard for handing allegations in a complaint that are contradicted by attached exhibits is misguided. [Doc. No. 60-1, p. 7 (citing *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) ("when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations"))]. The Ninth Circuit has held that a court "*need not . . .* accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell*, 266 F.3d at 988 (emphasis added). That standard does not necessitate that exhibits attached to a complaint "trump[]" allegations made in the complaint. *Thompson*, 300 F. 3d at 754. Instead, when a court in this circuit weighs contradictory exhibits against allegations in a complaint, a court may deviate from the presumed truthfulness of an allegation by exercising its reasoned judgment and "drawing on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679; *see also Sprewell*, 266 F.3d at 988 ("a plaintiff *can* . . . plead himself out of a claim by including unnecessary details contrary to his claims" (emphasis added)). This Court will not apply the mechanical standard argued by defendant. Rather, this Court will exercise its judgment consistent with Ninth Circuit standards, mindful of the leniency afforded *pro se* plaintiffs.

### B. **ADA and Rehabilitation Act Claim**

To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

> (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services,

5

programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007); *see also Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001). Title II of the ADA was modeled after § 504 of the Rehabilitation Act and is thus analyzed under the same standard. *Duvall*, 260 F.3d at 1135-36. A state official acting in his official capacity may be a proper defendant pursuant to an ADA Title II claim. *Miranda v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003); *cf. Vinson v. Thomas*, 288 F.3d 1145, 1148 (9th Cir. 2002) (affirming that plaintiffs cannot bring a claim against defendants in their individual capacities under Title II of the ADA).

To recover money damages under Title II of the ADA or § 504 of the Rehabilitation Act, "a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall*, 260 F.3d at 1138; *see also Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) ("The same remedies are available for violations of Title II of the ADA and § 504 of the [Rehabilitation Act]."). "Intentional discrimination" means "deliberate indifference" which requires two prongs: "[(1)] knowledge that a harm to a federally protected right is substantially likely, and [(2)] a failure to act upon that likelihood." *Duvall*, 260 F.3d at 1139. The second prong is not satisfied if the failure to fulfill the duty to accommodate results from mere negligence. *Id.* Rather, there must be "an element of deliberateness." *Id.* In the prison context, a plaintiff must show not only a violation, but also that the challenged policy is not reasonably related to the prison's legitimate penological interests. *Pierce v. County of Orange*, 526 F.3d 1190, 1216-17 (9th Cir. 2008). Put differently, inmates are entitled to "reasonable accommodations, not to optimal ones finely tuned to [inmates'] preferences." *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 126, 146 (1st. Cir. 2014); *see also Thomas v. Pa. Dept. of Corr.*, 615 F. Supp. 2d 411 (W.D. Pa. 2009) (finding no deliberate

indifference to plaintiff's handicap of an above the knee amputation when prison officials denied plaintiff a handicap cell, but was instead given a bottom bunk and a cell on the bottom tier).

Plaintiff alleges in the SAC that he is entitled to ADA benefits [SAC, at p. 6-7; Exhs. A, B, C, and F], and that RJDCF provided ADA-accessible tables in the dining hall at which he had a right to sit [*Id.*, at p. 5].

Defendant argues in his Motion that plaintiff's SAC fails to cure the deficiencies of plaintiff's First Amended Complaint. [MTD, at p. 1]. The factual circumstances differ between the two incidents in plaintiff's SAC, and so are analyzed separately below.

### 1. **December 27, 2015 Incident**

Defendant first argues that plaintiff's SAC fails to demonstrate that he was denied the benefit of utilizing the dining hall on December 27, 2015, thereby failing to fulfill the third element of the *O'Guinn* standard. [*Id.*, at p. 5]. The Court maintains, as stated in its prior Report and Recommendation, that the central question is whether plaintiff was wrongfully denied access to an ADA table in a RJDCF dining hall, not whether he was denied access to the dining hall. [Doc. No. 23, at p. 9]. Plaintiff's allegations regarding the December incident may be divided into two parts: (1) what happened before plaintiff allegedly spoke with Sergeant Hernandez; and, (2) what happened during and after that conversation.

The Court finds that plaintiff alleges facts sufficient to create a plausible inference that defendant denied plaintiff access to the ADA tables, thus meeting the first three prongs of the *O'Guinn* standard. [SAC, at pp. 6-7, 24]. Specifically, plaintiff alleges that the ADA tables had ample space for him and other differently-abled inmates at the time. [*Id.*, at p. 6]. Plaintiff further alleges that defendant ordered him to "move and sit with the able-bodied [inmates]." [*Id.*]. When plaintiff refused, he alleges that defendant forcibly removed him from the ADA tables. [*Id.*, at p. 7]. The fourth prong of the *O'Guinn* standard requires that defendant acted with deliberate indifference in harming plaintiff. *Duvall*, 260 F.3d at 1138-39. Plaintiff only alleges that defendant was "aware of [his] walker," and had

7

previously observed him use it to "sit at an ADA table." [SAC, at p. 6]. At most, plaintiff's allegations support the conclusion that defendant was negligent in asking plaintiff to move. Negligence does not equal deliberate indifference, and so plaintiff's claim fails. *Duvall*, 260 F.3d at 1139.[4]

Moreover, "[i]nmates . . . must promptly and courteously obey written and verbal orders." Cal. Code Regs. tit. 15, § 3005(b). "[§ 3005(b)] contains no exception to the requirement that inmates promptly and courteously obey written and verbal orders and instructions from staff." *Lopez v. Galaza*, 2006 WL 3147686, *11 (E.D. Cal. Nov. 1st, 2006). The Ninth Circuit has overlooked prisoners' behavior in retaliatory claim cases. *See Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). Even then, for a prisoner's behavior to be disregarded, a claim must allege facts sufficient to support a plausible inference that a constitutional right has been violated. *See Sheppard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (reasoning that where factual issues remained as to prison guard's motives in taking action against prisoner, "it is often beneficial to analyze whether the relevant facts make out a constitutional violation before determining whether the right at issue is clearly established" (internal quotations omitted)). Here, plaintiff disobeyed defendant's direct order to move tables. [SAC, at pp. 6-7, 24]. Defendant then "escorted plaintiff [out of the dining hall]" as a response to plaintiff's refusal to comply with defendant's direct order. [SAC, at p.7]. This Court has determined that defendant's

---

[4] Defendant argues that the Court should consider an exhibit included in plaintiff's FAC that is not in the SAC. That argument is misguided. The Court agrees with plaintiff that the SAC "supersedes" the FAC. [Opposition, p. 8]. In the Ninth Circuit, "factual assertions in [complaints], *unless amended*, are conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (emphasis added). Defendant's Motion to Dismiss is in response to plaintiff's SAC. Plaintiff is not bound by allegations he made in his FAC, and neither is this Court. *See PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007) ("[The District Court] determined that the allegations in the amended complaint were unfounded because they contradicted . . . earlier allegations [the plaintiff] made in its original complaint. But the Federal Rules of Civil Procedure do not authorize a district court to adjudicate claims on the merits [in deciding a motion to dismiss]; the court may only review claims for legal sufficiency."). Given the leniency extended to *pro se* plaintiffs, the Court declines to consider the exhibit from the FAC.

negligence did not support plaintiff's claim under the ADA and RA. While plaintiff might be entitled to sit at the ADA tables, he is not entitled to disobey a direct order from a prison guard who was not violating his rights.

This Court finds no violation at this point in the incident because defendant's actions do not rise to the level of deliberateness necessary to state a claim under the ADA or RA.

Turning to the events alleged after plaintiff was able to draw the attention of Sergeant Hernandez, and construing the SAC in the light most favorable to plaintiff, the Court again finds that plaintiff has not alleged facts as to whether he was denied access to the ADA tables. The third prong of the *O'Guinn* standard requires that plaintiff actually suffered some harm—that he was "denied the benefits of" RJDCF's ADA accommodations. *O'Guinn*, 502 F.3d at 1060. The SAC alleges only that Sgt. Hernandez "instructed [d]efendant in [p]laintiff's presence that [he] had a right to sit[] . . . at the ADA tables." [SAC, at p. 7]. For plaintiff to satisfy the *O'Guinn* standard, he would need to allege facts as to what occurred after his conversation with Sgt. Hernandez. However, plaintiff does not do so. It is unclear whether plaintiff was allowed to return to the dining hall and eat his meal at the ADA table, and this Court declines to make an inference based on the allegations in the SAC. Therefore, there is no violation under the ADA or RA.

It is therefore RECOMMENDED that defendant's Motion to Dismiss be GRANTED as to plaintiff's claims against defendant for the December 27, 2015 incident. Since plaintiff can remedy the defects in the SAC, the court RECOMMENDS that the dismissal be WITHOUT PREJUDICE and plaintiff be given leave to amend the SAC.

### 2. January 20, 2016 Incident

Defendant also argues that plaintiff's SAC fails to demonstrate that he was denied access to the dining hall's ADA tables on January 20, 2016 because plaintiff's allegations are contradicted by an exhibit attached to his amended complaint. [MTD, at p. 7 (citing SAC, at p. 8; Exh. G ("Weatherford Declaration" hereon))]. Plaintiff contests that the Weatherford Declaration does not contradict his allegations and that defendant mischaracterizes the declaration in his MTD. [Opposition, p. 8]. The Weatherford

9

Declaration, consisting of two versions of inmate Walter Weatherford's eyewitness account of the events on January 20, state that defendant had pulled plaintiff over as plaintiff exited the dining hall. In the handwritten version, Weatherford states that he "witnessed [defendant] pull [plaintiff] over as he [*exited*] the chow hall." [Weatherford Declaration, SAC at p. 32 (emphasis added)]. The typed version states that defendant pulled plaintiff over "*outside* [the dining hall] as [defendant] exited [the dining hall]." [*Id.* at p. 33 (emphasis added)]. Weatherford acknowledges that he was standing "[at] a distance" from plaintiff when he witnessed the incident. [*Id.*]. He also corroborates plaintiff's allegation that defendant pushed, shoved, and handcuffed him before escorting him to a holding cell. [*Id.* at pp. 33-34].

Applying the Ninth Circuit standard articulated *supra*, the Court finds that the Weatherford Declaration does not warrant a conclusion contrary to plaintiff's allegations in the SAC. A substantial majority of prior decisions on this issue grapple with attachments with greater presumed accuracy than an eye witness account like the declaration plaintiff provides. *See Sprewell*, 266 F.3d at 988-99 (concluding that an *uncontested* arbitration award attached to plaintiff's complaint effectively "plead him[] out of a claim"); *see also Parkinson v. Robanda Int'l, Inc.*, 641 F. App'x 745, 748 (9th Cir. 2016) (deeming plaintiff's allegations untrue because of contradictory exhibits, including a licensing agreement signed by plaintiff and an asset purchase agreement); *Chyba v. Green Tree Servicing, L.L.C.*, 586 F. App'x 397, 398 (9th Cir. 2014) (attached letter written and signed by plaintiff herself contradicted allegations made in her complaint); *Santana v. Zhang*, 2016 WL 4917118, at *12 (S.D. Cal. Sept. 15, 2016) (a *pro se* prisoner's complaint included attached medical records that contradicted his allegations). Unlike the cases, *supra*, Weatherford's description is not a formal document negotiated and contemplated by professionals, nor is it well-drafted correspondence or an expert opinion. The Ninth Circuit has reversed and remanded decisions dismissing a plaintiff's claim because exhibits attached to a complaint are inconsistent with a plaintiff's allegations. *Simon v. City of Phoenix*, 436 F. App'x 756, 757 (9th Cir. 2011) (remanding to the district court for abuse

of discretion in dismissing plaintiff's claim where "disputed and inconsistent" police officer statements attached to the plaintiff's complaint contradicted allegations made in the complaint, instead holding that the contradictions "[did] not warrant a contrary conclusion"). The conflicting testimony of law enforcement officers, who are more experienced than Weatherford in drafting written statements, do not overcome plaintiff's allegations. [*Id.*]. Read liberally, Weatherford's statement corroborates plaintiff's allegations. *Pro se* plaintiffs must be afforded some leniency when evaluating their complaints, and this Court declines to jettison plaintiff's plausible account of the events on January 20, 2016 because of an imprecise eyewitness declaration from a fellow inmate.

To violate the deliberate indifference standard in the context of the ADA or RA does not require a violation of a clear constitutional right, as implied by defendant. *Duval v. County of Kitsap*. 260 F.3d 1124, 1140-41 (9th Cir. 2011). The Ninth Circuit's adoption of the "deliberate indifference" standard for ADA and RA claims in *Duval* relied upon the construction articulated by the Supreme Court of the United States in *City of Canton v. Harris*. 489 U.S. 378 (1989). The standard is well-worn: "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duval* at 1139. It is of no moment that the language for the deliberate indifference standard adopted by the Ninth Circuit in the ADA context originated in a Supreme Court case evaluating the metes and bounds of a *Monell* claim. While the language might be similar, the law under interpretation is not.

Defendant further contends *Duval* does not "address the severity of the conduct necessary to rise to the level of deliberate indifference" under the ADA. [Doc. No. 68, at p. 4]. This Court disagrees. The panel's ruling explained in detail the conduct of various individual defendants and why the evidence adduced at that time was sufficient to create a dispute of material fact for a plaintiff to survive summary judgment. That the Court chose not to articulate the threshold in purely objective terms does not prevent this Court from analogizing defendant's conduct in this case to the defendants' conduct in *Duval*. Isolated action by an individual defendant can constitute deliberate indifference when that

11

defendant's "decisions not to accommodate [a plaintiff are] considered and deliberate." *Id.* Consideration and deliberateness can be inferred from a defendant's prior knowledge of the plaintiff's disability and his unwillingness to incorporate the disability into his decision-making process. *Id.* When reviewing the ADA claims brought against individual county defendants and the district court's grant of summary judgment in their favor, the Ninth Circuit has taken care to evaluate the defendants' prior knowledge in the context of the "deliberate decision[s]" they made. *Id.* Upon reversing the district court's ruling, the *Duval* Court explained:

> Razey made a *deliberate decision* to deny Duvall's requests for a particular auxiliary aid *without making any effort to determine whether it would have been possible to provide the requested accommodation*. Similarly, in response to Duvall's request for real-time transcription at his post-trial hearing, Richardson merely informed Duvall that his hearing would be held in the courtroom designated for hearing-impaired individuals, although Duvall had advised her over six weeks before that he was familiar with the audio system used in Courtroom 269 and that it was inadequate. Nonetheless, *Richardson denied his request without investigating whether the facilities in the courtroom would accommodate Duvall's needs*. If Duvall's account of the timing and content of his requests for accommodation and defendants' reactions thereto are accurate, *a trier of fact could conclude that defendants' decisions not to accommodate him were considered and deliberate.* Accordingly, viewing the record as we must on summary judgment, Duvall has presented sufficient evidence to show deliberate indifference, and thus intentional discrimination, on the part of Botta, Razey and Richardson.

*Id.* (emphasis added). Nowhere in its analysis does the Ninth Circuit predicate its ruling regarding plaintiff's ADA claims on a denial of a constitutional right. If the rights and remedies under the ADA are coextensive with the rights and remedies under the Constitution, as defendant argues, then the ADA is mere surplusage. This Court sees no basis to accept defendant's contention. Conversely, as stated above, the Court carefully evaluated both the action and inaction by individual defendants once apparent they were on notice of plaintiff's disability.

Here, plaintiff's account of the events of January 20, 2016, combined with

defendant's prior knowledge of plaintiff's right to sit at the ADA table, support a plausible inference that defendant acted with deliberate indifference and thus violated the ADA. On December 27, 2015, defendant was instructed by his superior officer "that [plaintiff] had a right to sit[] . . . at the ADA tables." [SAC, at p. 7]. Regardless of defendant's potential ignorance prior to the December incident, the SAC plainly alleges that defendant knew of plaintiff's right on January 20, 2016, akin to the prior notice of defendants in *Duval*. With full knowledge of that right, defendant did not allow plaintiff to sit at the ADA table, but rather allegedly removed him from the dining hall, and proceeded to push, shove, and threaten him before taking him to a holding cell. [*Id.*, at pp. 8-9]. There was no "legitimate penological justification[]" in defendant's conduct, as alleged. It is plausible that defendant's actions as alleged – pushing and shoving an individual who has a walking boot and requires a walker for additional stability – were intended to target, and exacerbate, the challenges facing someone with plaintiff's disability. *Pierce*, 526 F.3d at 1211.

It is therefore RECOMMENDED that defendant's Motion to Dismiss be DENIED as to plaintiff's claims against defendant for the January 20, 2016 incident.

## CONCLUSION

The undersigned Magistrate Judge submits this Report and Recommendation to the United States District Judge Bencivengo pursuant to Title 28, United States Code, Section 636(b)(1). For all of reasons outlined above, IT IS HEREBY RECOMMENDED that the District Court issue an Order:

(1) **GRANTING** defendant's Motion as to the events of December 27, 2015, but with **THIRTY (30) DAYS** leave to amend;

(2) **DENYING** defendant's Motion as to the events of January 20, 2016.

IT IS HEREBY ORDERED that **no later than twenty-one (21) court days from the date this Order is filed**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may

waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 24, 2018

Hon. Karen S. Crawford
United States Magistrate Judge